Judge Mills
delivered the Opinion of the Court.
[Absent Chief Justice Bibb.]
Violet and others exhibited their bill in Chancery against Bowman, setting up an adverse entry for land, made in the year 1783 — alleging it to be legal and valid, and praying relief against. Use ad *351 versee tier patent of Bowman, who answered, contesting the allegations of the bill; hut the court below sustained the entry of the complainants, and gave the relief desired; from which decree Bowman has appealed.
After acquired lands did not pass, by will, in 1732-
An entry of land in the name of a dead man was not an appropriation of it
Act of 1793 vested the heir with the land entered, after the date of the will, made in 1782, and not the devisee.
In contests with claims maintained under the act of ’93, they are regarded as originated at that date.
*351 We have not thought it necessary to state the calls of the entry, or enquire into its merits; because on the face of the complainant's hill and title,papers, there appears an insuperable- objection to their recovery The complainants are, John Violet, Thomas Mounts and Effia McCormic; and they exhibit an entry made in the year 1783 —the survey and the grant-in the name of William Crawford; and next, his will, dated 16th May, 1782, and proved 10th September, 178-2, in which, after making sundry devises and requests, the residuo of his estate, both real and personal, is devised to his three children, John Cracford, Sarah Harrison and the said Effia McConnie; which residuary clause was supposed to pass to said Effia one-third or the land in question. which she has sold to her co-complainant. Mounts, and he has sold to Violet. -From this statement it is clear, not only that t.he will could not have passed the land at that date, which was acquired afterwards, even if the testator had lived to the date of the entry, and the same would have gone to the oldest son.
But what is worse, the entry was made in the name of a dead man. a mere non existence, and could not be an appropriation of land, as held by this court, in the, case cf McCracken’s heirs vs Beall and Bowman, 3 Marsh, 208.
The first operation of this entry, as was held in that case, was at the passage of the act of 1793, which declared patents issued to dead persons valid, to pass the title to the heirs and devisees of the patentee. But this act cannot be of any avail to the complainants here; for it vested the title in the heir at law, as lands acquired after the date of the will, and not in the devisee, who here claims.
Besides, if it did pass the, title to the devisee, if could not revoke the patent sf John Bowman, *352 granted in 1785, consistent with the compact wlisa Virginia, according to the principles of the caso of McCracken’s heirs vs Beall, &c. It is therefore evident, 1 hat neither of the complainants have any right to the entry and patent of William Crawford; and if they had, it must be inoperative against the patent of Bowman; and the court, therefore, erred in decreeing in their favor.
Decree for Violet reversed.
Bowman's cross bill, alleging he had recovered in ejectment, but Violet had delayed him by bill in equity and proceedings under the occupant laws, till his demise had expired, and the limitation had run, praying for possession of the land.
As the decree must be reversed, and the bill of the complainants he dismissed, another question occurs, somewhat novel in this country, and deserving consideration.
Bowman, during the pendency of this suit, filed bis cross bill, alleging that Violet held possession of the land at first, under an entry in the name of John May — that, he Bowman, brought his ejectment and recovered judgment at law against Violet, which Violet enjoined by his bill in equity, setting up May’s entry — that suit was pending fora number of years, and was ultimately decided against Violet, and th at decree was affirmed by this court, on the appeal of Violet — that Violet then applied for commissioners under the occupying claimant laws, and long delayed procuring an assessment to be made — that a report was at length returned, and once or twice quashed or recommitted — that finally the improvements, exceeding three-fourths of the value of the land, he, Bowman, elected to take the price of the land instead of paying for the improvements, and offered a release of his title, and prayed a judgment against Violet for the value of the land, as assessed by the commissioners; but that Violet moved to set aside the order appointing the commissioners and all proceedings thereon, relying on the ground, that the demise laid in the declaration tit ejectment had expired, and was successful in that motion — that Violet, by these long and embarrassing delays, had deprived him of the benefit of his judgment at law, and was pursuing him with his bill — and by these various devices had kept the possess ion ot the laud so long, that he, Bowman, would he bared in another ejectment, or other legal remedy, by the act of limitations. He therefore prays that the chancellor, on. dismissing this hill of the com *353 plainant, shall decree him possession of the land, to which he has established the superior title, both at law and in equity;
Demurrer to the cross bill not decided on below, because the decree on the original bill superseded it, taken up in this court, on reversing that decree.
In England the chancellor has interfered to control the evidence, pleas & controversies, set up in suits at law, on the ground that the advantages had been obtained by fraud, and were unconscientiously insisted on-
—Query, as to the extent of this power of the chancellor here.
Occupants of land under titles from the government, are prima facia, bone fide, as against adversary claimants, and may, in good conscience, use all legal means of defence against their actions; and the chancellor will not prohibit them.
*353 To this cross bill Violet demurred; but as the chancellor sustained the original bill, he bad no occasion to touch the merits of the cross bill; which now comes up tinder our decision upon the original, Ought the chancellor, in such case, to give relief?
It is admitted that cases can be found in the English Chancery, where courts of equity have interferred to control the evidence, pleas and controversies set up in suits at law, on the ground that the defence set up, or advantage attempted to be relied on, was unconscientions and unjust under the cumstances of the case, because the party had, by various devices, got himself on the ground of advantage.
It is not necessary that we should name all those cases, or determine whether they can or can not be ail supported as law, in this country. It is sufficient for us to ascertain, whether that power, if.it exists in the chancellor, ought to be exercised in favor of parties demanding possession of the soil by virtue of an adverse entry, survey and grant, under the Jaws existing in this State, against another claiming under a similar title.
It must be remembered that our titles in this country, although derived from the same government, are independent of, and not in the slightest degree, connected with each other. Nothing on the face of one, intimates that there is another; but the contrary is rather to be inferred, and' by tracing it to the, root no indication is given that there is danger. The. holder may settle honestly and unsuspicious, till his home is demanded, after a length of time, by another holding a title precisely similar. Each party appears honestly and innocently to have come to their present situation. No priority or intentional wrong from, one to the other, can be supposed or implied to give the least base of equitable relief. They hitherto have been entire strangers. One is the possessor a length of time, tire other is out of *354 possession, and in other respects they appear to be on an equality,’until their titles are scrutinized by legal skill, and each are weighed in the judicial balance and one is found wanting. It can not, under these circumstances, be unconscientious in the possessor to resort to all legal means within his power, to retain that possession, from which he must be ousted by a mere rigid rule of law. If in using all legal defences fairly, heat length comes into a situation where another rigid rule protects his possession, the chancellor ought not to interfere to unshield him.
Character of the controversies on the adversary claims to land in Kentucky—necessity of the statutes of limitations—and propriety of giving them full effect.
Equity cannot prevent the possessor from the defence of the limitation, unless he has acquired the advantage by artifice and fraud upon his adversary.
*354 Another argument arising ah inconvenienti, fortifies this conclusion. No country has ever suffered more than this has from lauded controversies of this nature. They differ from all other controversies in the annals of jurisprudence. Lawyers of the first eminence and well versed in the rest of our codes may, and often do, know nothing about tiiis branch of the science of law, Which is entirely new, and probably in the next generation, our most skilful lawyers and jurists, educated in the country, will know as little, owing to the operation of this statute of limitations, which the appellant seeks, by the aid of the chancellor, now to prevent. Our courts were found inadequate to decide all those contests. The progress of time, by the aid of this statute, has proved the swiftest judge; and the docket of this court, bears strong evidence of its decisions. Formerly, the docket groaned under these controversies, and they formed the chief burden of judicial duty and toil. Now here and there sparsely scattered over it, appears one and another of these contests, greatly diminished in number and importance— proving and demonstrating more clearly here than in any other country in the world, the policy and wisdom of this statute, and its wholesome process on the interests of the community. Shall the chancellor interfere to impede this process? Before he docs, he ought to be. certain it is his duty, and be confident of his power.
It may also be added, that the plea afforded to the defendant at law, and which the plaintiff, in this *355 Cross bill, desires the chancellor to take from him, or to decree the possession at once, lest he may use it, rests not for its origin in any rule of court, judicial authority, or placed in the discretion of the judge; but it is granted by a statute to all the citizens of the community. There is no power in any other department of government to. revoke-this at pleasure. To grant such a power to the chancellor would make him at least pro hac vice, the despot; the depository of absolute and supreme power. All that the chancellor can do on this subject, is to prevent the abuse of this privilege, and to keep parties from acquiring ibis privilege by perverting legal remedies, by artifice, device or fraud, and then using it against conscience. In case there is no conscientious relation between the parties, with claims, as far as respects their relation to each other, independent, and of equal merit, one attempts, by the use of lapse of time, in pleading the statute, to ward off the recovery of that, which he is under no conscientious obligation to surrender, the chancellor can not interfere. The party must have acquired it against conscience, before this ought to be done.
That an ejectment is delayed by the fair management of the defence, until the demise expires, is no ground for the interference of equity.
Nor will the delay of the habere facias, by injunction on a bill upon the entry, and proceedings under the occupant laws, till the demise has expired, authorise the chancellor to help him.
*355 We will, therefore, notice the circumstances by which this party has acquired his security under this plea. A suit was brought at law by his adversary, and judgment obtained, for the possession, That suit, from. its. form, had a demise laid in the declaration for a certain number of. years, beyond which the judgment could have no force, Over the length of this demise, the appellee, Violet, had no control. It was fixed at the pleasure of Bowman, and his counsel,,and in doing so,, they were at liberty to fix it at ninety nine years, as well as a shorter period. If it was fixed at a period which would, not overreach the time that the cause, by fair management, and without fraud, could be kept from a final decision, it was the fault of Bowman, and not of Violet; and this error of Bowman can not furnish him with any ground for relief.
But it is insisted- that Violet had obtained an injunction, and that this, as well as his claim for improvements, was the great cause of delay, which *356 wasted the demise of Bowman. This injunction the law allowed him; and if the pretended equity arose out of any acts of Violet, which he must be conscious created no equity, and the bill was apparently for delay, and to harrass his adversary, it would furnish a strong argument for the relief claimed. But instead of this his equity was founded on an adverse entry, survey and grant — the acts of bis government, which he had a right to presume valid, until decided otherwise. Considering the difficulties which the most eminent counsel and this court have had in coming to a satisfactory conclusion, as to the validity of claims in this new branch of jurisprudence, we can not think it correct to. charge, the conscience of the litigants, in making the application for our decision,
Where the demise is about to expire, pending a bill with injunction on the entry, and proceedings under the occupant laws, if the plaintiff moves it, the occupant shall consent to the extension of the demise, or the court will allow execution to go—But if plaintiff at law sleeps (and defendant need not wake him,) till his demise is out, his remedy is gone.
It is true, he proved to be mistaken. But it is equally true, that pending either the injunction or appeal, Bowman, by an application to. the court, might have compelled him to consent to an extension of the demise, or to the discharge of the injunction, so that he might enter. So when he claimed payment for his improvements, the court might have refused his claim, till he made the judgment operative by an extension of the demise. But no application of this kind was made. Bowman slept securely without attention to his demise, and protracted the time by excepting to the report of the commissioners, and resisted the claim for improvements until his demise expired; and his adversary could not be bound, in conscience, to warn him that it was near a close. As to the present bill, it has no injunction. An order was obtained for an injunction, hut no bond with security, was given, and of course, no injunction issued. For these reasons we can not conceive it proper for the chancellor to interfere in a contest relative to the merits of these adverse conflicting land claims, and to prevent the possessor froas relying on lapse of time at law, when there has been no fraud or apparent intentional wrong in him, which gave him the advantage he has obtained.
To these grounds we may add another. A person *357 holding a judgment in ejectment, may, at common law, without a writ of habere facias possessionem, enter and execute the judgment. The writ is necessary; for the judgment itself, operates as a warrant, and the writ is a process to enforce the on try under the judgment, when opposed. And notwithstanding the act of Assembly allowing payment for improvements, restrained the emanation of the writ, and the enforcing possession thereby; yet the plaintiff, who had established his right by a judgment, might enter, the provisions of the act notwith standing; as held by this court in the case of Tribble vs Frame, 5 Litt. Rep. 187.
Judgment in ejectment is a warrant for the plaintiff to enter, tho' his writ is suspended by proceedings under the statute for improvements-
Query, as to the effect of the statute against forcible entries and detainers, be that as it may, the entry interrupts the possession and avoids the bar by lapse of time.
Example of utmost chancelor (in Ireland,) has gone in disregard of the limitation at law-
*357 The only remaining statute which might be sap-posed to restrain the common law privilege of entering under a judgment without a writ of possession, is the act to prevent forcible entries and detainers, which authorizes the removal on the. finding ot an inquest, of any person who has entered against the will, and without the consent of him who, at the time, may have the possession in fact. Whether this statute can apply to, and operate against, one who, at the time of his entry, holds a judgment in ejectment to warrant his entry, we need not now enquire. For if it he conceded for sake of argument that it does, still it has been held by this court, that a person removed by a proceeding under that act, and at the lime holding the legal estate, may, nevertheless, justify bis entry under his title in an action of trespass, and according to. the same principles, he not only might enter, and if he did enter and was removed, he might still avail himself of that entry to avoid the limitation; and thereby shew that his right of entry was not tolled Rowman then might, by making his entry, have preserved his right of entry at law; and had he done so, he would not be under the necessity of supplying that right by an application to the chancellor; and bis not having done so, is a good reason why the chancellor should not, now, relieve him.
In looking over the European cases on this subject, the most extensive and able one that was ever n niter our notice is, 1 Scho. and Lef. 413, Bond vs *358 Hopkins. In ill at case Lord Chancellor Redesdale reviews most of the cases, and his reasoning supports the principle on which we have placed the interference of the chancellor — that is, confines it to cases that reach the conscience, and prevents the reliance on a legal bar, when it would be unconscientions to do so. the case itself is a fit illustration of this decision. There the party who attempted to rely on the plea of the statute of limitations, and who was prevented by the chancellor from doing so, had, under a forged or fraudulent will, possessed himself of an estate against the interests of the heir at law. The heir filed a bill for a disclosure of the title papers, surreptitiously obtained by his adversary; and to discuss the will. A bill was then filed by the fraudulent claimant, to establish the will, which was contested, and ultimately the will w as destroyed by the decree of the chancellor, and, the claimant directed to pay the rent; but he extended his decree no further. The heir incensed- at his disappointment in not realizing the estate in full by such decree as was expected, from a state of dependence, became desperate, and died shortly after in prison. These controversies lasted many years; and when the same fraudulent claimant was attacked by She heir of the first heir at law, he attempted to setup this lapse of time as a bar, and was prevented from doing so, the chancellor deciding, that as a court of equity only adopted the statute by analogy, and not in obedience to any of its express provisions, it would interfere and prevent the operation of the statute in cases where the chancellor, for conscience sake, would not apply its provisions.
-Query, whether the chancellor here would go so far.
It ought, however to be remarked, that in supporting his opinion, he cited the case of a chancellor dispensing with the statute to prevent frauds, and perjuries, by decreeing specific performance of a contract in parol only — a distance which the chancellor in this country has refused to go; which is a parallel case, going to prove that courts of chancery here, are more cautious in attempting to dispense with the positive enactments of the Legislature, and claim no such power; but only an authority to prev *359 ent their abuse, by fraudulently or unconscientiously creeping within their letter, and thus applying them to purposes not intended.
Crittenden for appellant; Tallet and Monroe for appellee.
The decree must, therefore, be reversed with cost, and the cause be remanded 'with directions to the court below to dismiss both the bill and cross bill, at the costs of the complainants respectively.